**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MOLTEN METAL EQUIPMENT INNOVATIONS, INC.** | ) ) ) | **Case No. 1:10cv388** |
| Petitioner, | ) ) ) | **Judge Dan Aaron Polster** |
| vs. | ) ) | |
| **PYROTEK INC.,** | ) ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Respondent. | ) | |

Before the Court are Petitioner Molten Metal Equipment Innovation's Motion to Confirm Arbitration Award (**Doc #: 1**) and Respondent Pyrotek Inc.'s Motion to Vacate Arbitration Award (**Doc #: 16**). For the reasons discussed, *infra*, Petitioner's Application to Confirm Arbitration Award is **GRANTED** and Respondent's Motion to Vacate Arbitration Award is **DENIED**.

**I.**

Under the terms of a February 22, 2006 settlement agreement resolving a previous litigation, Petitioner Molten Metal Equipment Innovation ("MMEI") and Respondent Pyrotek Inc. ("Pyrotek") agreed to resolve future disputes by arbitration based on American Arbitration Association ("AAA") Commercial Rules. On May 7, 2009, MMEI demanded arbitration for infringement of United States Patent No. 7,402,276 ("the '276 patent"). On June 5, 2009, MMEI

asserted infringement of United States Patent No. 6,303,074 ("the '074 patent").  After Pyrotek objected to the appointment of one arbitrator, the parties, on July 6, 2009, selected Donald Frei ("the arbitrator") of the law firm Wood, Herron & Evans to arbitrate.  The arbitrator submitted a sworn affidavit stating that he had no conflicts with either party or its counsel.

Subsequent to a preliminary hearing and issuance of a scheduling order, the parties commenced discovery.  Following depositions of fact and expert witnesses in September and October 2009, the arbitrator ruled on summary judgment that the claims arising from the '276 patent were invalid.  On November 9, 2009, Pyrotek supplemented its invalidity expert report to include United States Patent No. 5,944,496 ("the '496 patent"), asserting that the '496 patent invalidated the '074 patent.  On November 10, 2009, MMEI filed a motion in limine to exclude the '496 patent.

The arbitration hearing took place over the next two days.  At the beginning of the hearing, the arbitrator denied MMEI's motion in limine, at which point MMEI admitted that the '496 patent is prior art[1] to the '074 patent.  Following the hearing, the parties submitted post-hearing opening and rebuttal briefs on December 9, 2009, and December 18, 2009, respectively.  On January 11, 2010, the parties submitted proposed findings of fact and conclusions of law.

On January 13, 2010, the arbitrator requested additional briefing on the issue of whether the '496 patent is prior art; briefs were submitted on January 25, 2010, and rebuttal briefs were submitted on February 8, 2010. On February 19, 2010, the arbitrator issued a "Reasoned Award" finding that Pyrotek infringed claims of the '074 patent and that Pyrotek

---

[1] Prior art refers to publicly available information that is relevant to a patent's claim of originality.  *See generally Riverwood Int'l Corp. v. R.A. Jones & Co., Inc.*, 324 F.3d 1346, 1353-54 (Fed. Cir. 2003).

-2-

could not demonstrate that any of the infringed claims of the '074 patent were invalid or unenforceable.  As compensation for infringement of the '074 patent, the arbitrator awarded MMEI lost profits damages in the amount of $1,446,988.

On February 22, 2010, MMEI filed the instant motion to confirm arbitration award.  (Doc #:1.)  During a teleconference with counsel, the Court granted Pyrotek until April 12, 2010, to oppose MMEI's motion.  Pyrotek filed its motion to vacate the arbitration award on April 12, 2010, arguing: (1) the award was procured by fraud or undue means; (2) there was evident partiality in the arbitrator; and (3) the arbitrator was guilty of misconduct in refusing to hear material evidence and prejudicing Pyrotek by advocating for MMEI.  (Doc #:16.)  MMEI submitted its response on May 12, 2010, (Doc #: 19), and Pyrotek, upon leave of the Court, filed a sur-reply on May 28, 2010.  (Doc #: 23.)

**II.**

"The Federal Arbitration Act ("FAA") expresses a presumption that arbitration awards will be confirmed." *Coffee Beanery, Ltd. v. WW, LLC*, 300 Fed. App'x 415, 418 (6th Cir. 2008) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005).  "When courts are called on to review an arbitrator's decision, the review is very narrow; [it is] one of the narrowest standards of judicial review in all American jurisprudence." *Id*.  The statutory grounds for vacating an arbitration award are set forth in 9 U.S.C. §10(a), which states, in part, that an arbitration award may be vacated:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced ...

*Id*.

Pyrotek argues that each of these three grounds apply to the instant action.

## A.  Fraud or Undue Means by MMEI

An arbitration award procured by fraud or undue means must be vacated if: (1) there is clear and convincing evidence of fraud; (2) the fraud materially relates to an issue involved in the arbitration; and (3) due diligence would not have prompted the discovery of the fraud during or prior to the arbitration. *See Int'l Brotherhood of Teamsters, Local 519 v. United Parcel Serv.*, 335 F.3d 497, 503 (6th Cir. 2003).

Pyrotek argues that the arbitration award should be vacated for fraud or undue means because MMEI's award resulted from the submission of fraudulent interrogatories and perjury.

### 1. Conception and First Public Use of '074 Patent

Pyrotek alleges that MMEI lied about the conception and first public use dates of the '074 dual rotors in its expert report, during deposition and at the arbitration hearing. Pyrotek's allegations arise from its belief that the '496 patent was the first conception of the dual rotor described in the '074 patent and that this patent had already been in public use because it had been previously installed at a customer site. As evidence, Pyrotek highlights

-4-

declarations submitted in support of the application to continue the '496 patent,[2] describing a rotor constructed at the work site of an MMEI customer called Vulcan. However, the arbitrator already rejected these very same arguments and evidence. (*See* Doc #: 10-1 at 8.) Because Pyrotek has presented no new allegations, the Court has no basis for determining that there was clear and convincing evidence that MMEI's interrogatory responses and testimony were fraudulent. To find otherwise would essentially undermine a substantive determination made by the arbitrator. *See Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 585 (2008) (citing *Wilko v. Swan*, 346 U.S. 427, 436 (1953) (overturned on other grounds)) ("interpretations of the law by the arbitrators ... are not subject, in the federal courts, to judicial review for error in interpretation").

Moreover, the award cannot be vacated based on the allegedly fraudulent interrogatories and perjury because Pytrotek discovered the alleged fraud *during the* arbitration. Therefore, Pyrotek cannot assert that, exercising due diligence, it could not have discovered the fraud prior to or during the arbitration. *See Int'l Brotherhood of Teamsters*, 335 F.3d at 503.

### *2. Stipulation of '496 Patent as Prior Art and Abandonment of '496 Patent*

Pyrotek further argues that MMEI committed fraud by first stipulating that the '496 patent was prior art at the arbitration hearing but then reversing positions when the arbitrator raised the issue *sua sponte* after the hearing. Pyrotek raises a similar allegation regarding MMEI reversing positions on its alleged abandonment of the '496 patent.

The arbitrator's Reasoned Award already addressed Pyrotek's argument

---

[2]The continuation of the '496 patent, to which the declarations were attached, is United States Patent No. 6,345,964 (referred to in the pleadings as "the '964 patent"). For the sake of simplicity, the Court will refer to the '964 patent as the continuation of the '496 patent.

concerning MMEI's reversal on the prior art issue. Citing *Riverwood Int'l Corp. v. R.A. Jones & Co., Inc.*, 324 F.3d 1346 (Fed. Cir. 2003), the arbitrator found that an inventor's admission that her earlier work is prior art is not binding. (Doc #: 10-1 at 4.) Rather, there must be an independent statutory basis for determining that the earlier work is prior art. *Riverwood Int'l Corp.*, 324 F.3d at 1354 (the doctrine that earlier work "can become prior art by admission ... is inapplicable when the subject matter at issue is the inventor's own work"). The arbitrator found that no such statutory basis exists here. As the Court cannot review an arbitrator's interpretation of the law, the award cannot be vacated on these grounds. *See Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. at 585.

Moreover, the arbitrator also rejected Pyrotek's alternative argument that judicial estoppel prevents MMEI from reversing its position on the '496 patent being prior art. (Doc #: 10-1 at 5.) Noting that judicial estoppel requires that a party succeed in persuading a court to adopt the earlier position, the arbitrator concluded that MMEI was not judicially estopped from reversing its position because the arbitrator never accepted MMEI's stipulation that the '496 patent was indeed prior art. (*Id. citing Sandisk Corp. v. Memorex Prod.*, 415 F.3d 1278, 1290-91(Fed. Cir. 2005)). Again, without any new allegations, the Court has no basis for reversing the arbitrator's conclusion. As Pyrotek has conceded, arbitration is appealing because it expeditiously adjudicates controversies. (*See* Doc #: 17 at 27 (citing AAA Commercial Rules' description of arbitration as "an effective way to resolve disputes privately, promptly, and economically".); *see also Floyd County Bd. Of Educ. v. EUA Cogenex Corp.*, 198 F.3d 245 (Table), 1999 WL 1023704, at *2 (6th Cir. 1999) (noting that "... the primary purpose behind the federal policy favoring arbitration is the efficient resolution of disputes ...") One of the

mechanisms for accomplishing rapid adjudication is for the parties to stipulate to certain issues. However, not permitting a party to reconsider its stipulation, even after an arbitrator determines that the stipulated issue may be dispositive of the controversy, produces a disincentive for stipulation. Creating such a disincentive would slow down the arbitration process, thereby challenging one of the central tenets of arbitration that a party "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citation and internal quotations omitted).

Similarly, the arbitrator considered and rejected the argument that MMEI had abandoned the '496 patent. (Doc #: 10-1 at 6.) The Court will not re-visit the same evidence and arguments already made to the arbitrator. While Pyrotek fervently believes the arbitrator's decision is wrong, Pyrotek has not produced clear and convincing evidence of fraud.

## B. Evident Partiality

Pyrotek next argues that the arbitration award should be vacated based on the evident partiality of the arbitrator. Pyrotek asserts that the arbitrator violated American Arbitration Association ("AAA") Commercial Rules by failing to disclose his firm's involvement in litigation adverse to Pyrotek's counsel. Specifically, Pyrotek alleges that the arbitrator's law firm, Wood, Herron & Evans, is adverse to Pyrotek's counsel, Quinn Emmanuel, in *Paid Search Engine Tools, LLC v. Google Inc., et al.*, C.A. No. 2:08-cv-00061 (E.D. Tex. filed February 12, 2008) ((consolidated with *Paid Search Engine Tools, LLC v. Yahoo! Inc., et al.*, C.A. No. 2:07-cv-403) (E.D. Tex. filed Sept. 13, 2007)).[3] Pyrotek contends that this failure

---

[3] These cases will hereinafter be referred to as the "*Google* litigation."

to disclose is material because of the amount of money at stake in the *Google* litigation in the Eastern District of Texas.[4]  Pyrotek alleges that the arbitrator has a direct pecuniary interest in this litigation and therefore is biased under AAA rules.  Moreover, Pyrotek represents that it would not have selected the arbitrator had it been known of this adverse relationship to its counsel.

American Arbitration Association Commercial Rule 16(a) states that "[a]ny person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives."  Canon II(A)(2) of the AAA Code of Ethics for Arbitrators further states that arbitrators should disclose "any known existing or past financial, business, professional or personal relationship which might reasonably affect impartiality or lack of independence in the eyes of any of the parties."

To demonstrate evident partiality, "the challenging party must show that a reasonable person would have to conclude that an arbitrator was partial to the other party or the arbitration."  *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 306 (6th Cir. 1998) (citations omitted).  That is, "the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator."  *Id*.  "It is not enough to demonstrate an amorphous institutional predisposition toward the other side."  *Id*. (*citing Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir. 1998).  While actual bias need not be demonstrated, apparent bias is not enough to vacate the arbitrator's award.  *Andersons, Inc.*, 166

---

[4]Pyrotek represents that in a similar case, a plaintiff has demanded $600 million in damages.

F.3d at 329; *Uhl*, 512 F.3d at 307.  Awards should not be vacated "when arbitrators fail to disclose insubstantial relationships."  *Uhl*, 512 F.3d at 306 (quoting *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278, 281-82 (5th Cir. 2007), cert. denied, 127 S.Ct. 2943 (2007)).

While Pyrotek has requested discovery on the issue of evident partiality, no discovery is necessary for the Court to reject Pyrotek's claim.  At best, discovery would enable Pyrotek to demonstrate the arbitrator's financial interest in the *Google* litigation.  Yet, even if the arbitrator stands to financially benefit if his law firm's client prevails in the *Google* litigation, there is no basis to conclude that the arbitration would be tainted.  The *Google* litigation is entirely unrelated to the issues arbitrated by Pyrotek and MMEI.  The arbitrator's law firm is one of many representing the plaintiffs in the *Google* litigation while Pyrotek's counsel is one of many firms representing the defendants.  Moreover, neither the arbitrator nor any of Pyrotek's attorneys of record have made an appearance in the *Google* litigation.  That is, the arbitrator has no financial interest whatsoever in Pyrotek or MMEI, nor does he have a substantial relationship with either party or its counsel.  Therefore, the arbitrator did not stand to gain or lose anything from any ruling he made in the arbitration.

Even if one were to conclude that Wood, Herron & Evans' adversarial relationship to Quinn Emmanuel in the *Google* litigation equates to some sort of adverse relationship between the arbitrator and Pyrotek or its counsel, a claim of evident partiality cannot be sustained.  Though no case has addressed this exact factual scenario, the Sixth Circuit has refused to vacate on evident partiality grounds where the relationship between the arbitrator and counsel for one of the parties has been much stronger than in the case at bar.  For example, in

*Uhl*, the Sixth Circuit held that the arbitrator's failure to disclose that he previously served as co-counsel with one of the parties' counsel did not violate the evident partiality provision of the FAA. *Uhl*, 512 F.3d at 308; *see also Positive Software Solutions*, 476 F.3d at 283-84 (declining to vacate arbitration award due to "trivial former business relationship" of arbitrator previously acting as co-counsel in another matter with attorney for one the parties in arbitration). And in *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1360 (6th Cir. 1998), the Sixth Circuit refused to vacate where there was no evidence that the arbitrator, who had formerly been a law partner with counsel to one of the parties, possessed a personal interest in the arbitration or prior knowledge of the substance of the arbitration. Because "[t]o disqualify any arbitrator who had professional dealings with one of the parties ... would make it impossible, in some circumstances, to find a qualified arbitrator at all," *Nationwide Mut. Ins. Co., v. Home Ins. Co.*, 429 F.3d 640, 647 (6th Cir. 2005) (internal quotation marks omitted), there is no evident partiality merely where one parties' attorneys' firm is litigating against the arbitrator's firm in an unrelated matter. Moreover, whether Pyrotek would have selected the arbitrator had it known about his firm's involvement in the *Google* litigation is irrelevant. Otherwise, the Court would have to broaden the scope of its review of arbitration awards to examine the intent of the parties in selecting an arbitrator. Such an expansion would contravene recent Supreme Court jurisprudence "significantly reduc[ing] the ability of federal courts to vacate arbitration awards for reasons other than those specified in 9 U.S.C. §10 ..." *Coffee Beanery, Ltd.*, 300 Fed. App'x at 418 (*citing Hall Street Assocs.*, 552 U.S. at 585-87).

### C. Arbitrator Misconduct and Refusal to Hear Evidence

Pyrotek's final arguments are that the arbitrator violated Section 10(a)(3) of the

FAA by both refusing to hear evidence pertinent and material to the controversy and advocating for MMEI.  Pyrotek alleges that the arbitrator ignored requests for additional discovery on the '496 patent as prior art when the arbitrator revived this issue post-hearing and improperly refused to hear material evidence regarding inequitable conduct with regard to the '074 patent application.  Pyrotek also asserts that the arbitrator inappropriately advocated for MMEI by refusing to accept MMEI's admission that the '496 patent was prior art and then requiring the parties to brief the issue subsequent to the arbitration hearing.

### *1. Additional Discovery on '496 Patent as Prior Art*

Pyrotek states that the arbitrator "ignored Pyrotek's requests for additional discovery on newly uncovered facts."  (Doc #: 17 at 28.)  The newly uncovered facts included "evidence of commercial activity of the pumps containing the dual flow rotors, which would alternatively render the dual flow rotors in the '496 patent prior art under 35 U.S.C. §102(b)." (*Id*.)  The evidence referred to by Pyrotek are declarations contained within the application for continuation of the '496 patent, which Pyrotek believes MMEI installed at the work site of Vulcan, one of MMEI's customers.  However, the arbitrator considered these declarations and determined that they did not indicate that the dual flow rotors had actually been constructed and that the rotor referenced in the declaration may have, in fact, been a single-flow rotor, instead. Doc #: 10-1 at 8.  Having rejected Pyrotek's alleged evidence of commercial activity, the arbitrator was entirely within his discretion to determine that further discovery on the issue of the '496 patent as prior art was not necessary.  *See Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co.*, 205 F.3d 1340 (Table), 2000 WL 178554, at *6 (6th Cir. 2000) (finding that party had "opportunity to present its claims" where arbitration panel "permitted supplemental

-11-

briefs and documents to be filed before rendering its decision"). Therefore, the Court will not vacate the arbitrator's award because he did not permit additional discovery on the '496 patent.

### 2. *Inequitable Conduct Claim*

Similarly, the Court has no basis for overturning the arbitrator's decision not to consider Pyrotek's inequitable conduct claim. The arbitrator sustained MMEI's counsel objection to questioning about possible inequitable conduct with regard to the '074 patent because Pyrotek raised the issue in a one-sentence email two days before the hearing.[5] (Doc #: 19-11 at 660-65.) The arbitrator properly exercised his discretion in determining that Pyrotek had initiated the issue too close to the hearing date. Moreover, the arbitrator essentially provided a substantive ruling on the '074 patent inequitable conduct argument. Pyrotek's inequitable conduct argument stemmed from its belief that the '496 patent was prior art, as evidenced by the declarations provided in support of the '496 patent continuation application. The arbitrator reviewed the declarations and concluded that the '496 patent was not prior art. Finding that the '496 patent was prior art necessarily excluded the '074 patent inequitable conduct claim. Therefore, the arbitrator essentially rejected this claim on its merits.

### 3. *Advocating for MMEI*

Finally, the Court finds no merit in the argument that the arbitrator inappropriately advocated for MMEI by raising the prior art issue sua sponte subsequent to the arbitration hearing, even though the parties had stipulated that the '496 patent was prior art. Pyrotek contends that the arbitrator acted inappropriately by: (1) ignoring the stipulation; and (2)

---

[5]During the arbitration hearing, the arbitrator also determined that it was unnecessary to delve into Pyrotek's inequitable conduct claims with regard to the '276 patent because the '276 patent claims had been found to be unenforceable or invalid on summary judgment. (Doc #: 19-11 at 660-65.)

raising an issue that the parties had not agreed to be brought before the arbitrator.  As discussed, *supra*, because stipulations expedite the arbitration process, an arbitrator has the discretion to allow a party to reconsider a stipulation on a potentially dispositive issue.  Moreover, simply because the parties did not specifically submit the question of whether the '496 patent is prior art to the arbitrator does not foreclose the arbitrator from considering the issue if it helps resolve those matters the parties did present to the arbitrator.  There is no dispute that one of the issues submitted to the arbitrator was whether the '074 patent was infringed.  If the '496 patent is prior art then the '074 patent is invalidated.  Therefore, it is disingenuous for Pyrotek to suggest that the arbitrator acted inappropriately by seeking to determine whether the '496 patent is prior art.

### III.

For the reasons discussed, *supra*, Petitioner's Application to Confirm Arbitration Award is **GRANTED** and Respondent's Motion to Vacate Arbitration Award is **DENIED**.

**IT IS SO ORDERED.**

 */s/ Dan Aaron Polster        June 29, 2010*
**Dan Aaron Polster**
**United States District Judge**